[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for termination of parental rights brought to the Superior Court for Juvenile Matters in the Rockville Judicial District. The petitioner is the Commissioner of the Department of Children and Families. The respondents are Susan T. and Frank T., Jr., the biological parents of Jamie. Initially the petitioner alleged that the parents, having been found in prior proceedings on July 29, 1992, to have failed to properly care for their child, have now failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, that they could assume a responsible position in the life of the child. A further ground was alleged that there is no ongoing parent-child relationship with respect to the parents, which is defined as the relationship that ordinarily develops as a result of a parent having met, on a continuing basis, the physical, emotional, moral and educational needs of the child, and that to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child in violation of §§ 45a-717 and 17a-112
of the General Statutes. CT Page 5256-XXXXXX
Prior to the trial of the case, the child's mother filed a consent to terminate her parental rights. A motion to amend the petition to allege consent by the mother was granted on June 6, 1996. At the same hearing the mother was canvased [canvassed] and the court determined that the consent was knowingly and voluntarily made with the assistance of competent counsel.
The child's father failed to appear. Mother indicated that Frank T., Jr., knew of the assigned date. The Attorney General urged the court to proceed with the case. The court continued the case until July 15, 1996, at which hearing the respondent Frank T. Jr., appeared, claimed indigence, whereupon a new lawyer was appointed for him and the case continued for trial until August 7, 1996. The court specifically told him of the date. New counsel spoke with him on three occasions and urged him to be in court. His counsel made subsequent attempts to contact him, however, Mr. T. did not respond. On the date and time set for trial, counsel appeared for him, but he failed to appear. Counsel moved to withdraw in light of the inability to represent a non-appearing, uncooperative client. Counsel's motion to withdraw was granted.
Thereupon the petitioner called Deborah Trumbull, a social worker from the Department of Children and Families. The petitioner placed in evidence a social study, court-set expectations, and the court-ordered psychological evaluations of Dr. David Mantell.
The court, having heard the evidence, finds by clear and convincing evidence:
1. That Susan T. has consented to the termination of her parental rights.
2. The father, Frank T., Jr., having been found in a prior proceeding, on July 29, 1992, to have failed to properly care for their child, has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, that he could assume a responsible position in the life of the child.
3. That there is no ongoing parent-child relationship with respect to the parent, Frank T., Jr, which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing basis, the physical, emotional, moral CT Page 5256-YYYYYY and educational needs of the child and that to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child in violation of §§ 45a-717 and 17a-112 of the General Statutes.
4. These conditions have existed for more than one year.
DISPOSITION
It is not sufficient to find that grounds for termination exist. The court must also determine, pursuant to § 17a-112(d), if a termination of parental rights is in the best interests of the child. The court must make this finding by clear and convincing evidence. In re Romance M., 30 Conn. App. 839,847-48 (1993), appeal dismissed, 229 Conn. 345 (1994). See also Practice Book § 1050.1(3).
1) The Department of Children and Families has offered appropriate and timely services for transportation for visitation, for psychiatric counseling through the North Central Connecticut Mental Health program, for alcohol and drug treatment and counseling for Frank, and support services such as a parent aide, and an outpatient psychological evaluation by Dr. Mantell.
2) The court finds that the Department of Children and Families has made reasonable efforts given the situation and circumstances to provide counseling for the parents. Efforts to reunite the child with mother were made in August 1993. The child was subsequently removed on November 5, 1993. Even the mother agreed that Jamie was too difficult for her to control. The child was devastated by this development. The Department has unintentionally allowed an inordinate period of time, three and a half years, for these parents to acquire the skills and stability to effectively parent this child.
3) Regarding court orders, fulfillment of obligations, expectations and the like: The court finds that court approved expectations have urged Frank to secure and maintain clean, safe and adequate housing, which he has not done, to attend visitation sessions as often as permitted, which he has not done (he hasn't visited his son in a year, he knows the child's phone number and has only called one time); to participate in individual counseling and alcohol/drug treatment, which he has not done; and to attend AA meetings, of which he has not shown any CT Page 5256-ZZZZZZ verification. Dr. Mantell notes a history of alcohol and cocaine abuse. He went to jail for failure to keep appointments with the probation office as a direct result of his alcohol and drug addiction.
4) The child's feelings and emotional ties with the biological parent and foster parents were fully considered by the court. The child is bonded to his foster family, but has been recently removed from that home. Efforts will be made to return him to that home if possible. The court-appointed psychologist, Dr. Mantell, reports that the foster parents are the psychological parents to the child. With respect to the biological parents, there is a parental-child bonding, with great conflict and dissatisfaction in the relationship, particularly on Jamie's side. "He continues to feel distressed and conflicted because of his residual attachment to both mother and father who have each continuously disappointed him by their failure to claim him and provide a home for him." Dr. Mantell notes that "neither parent has an ongoing parental relationship with Jamie," although Jamie recognizes them as his mother and father. The child has multiple psychological parents, the foster parents are primary and his natural parents are well in secondary position. (Respondent's Exhibit 3.)
5) With respect to the age of the child, Jamie is nearly 11 years of age (he was born on September 26, 1985). This child requires stability in his life, a time to heal without the fear of greater uncertainty, and an affirmation by this court that he may have a permanent home. Leaving this child in legal "limbo" would hardly be in his best interest. A four year delay in bringing finality to this placement decision is inordinately long.
6) With respect to the efforts the parent has made to adjust his circumstances, conduct or conditions to make it in the best interests of the child to return to his home in the foreseeable future, the court finds that Frank T., Jr., has not demonstrated any parenting abilities in the past, and, given his recent history, it does not appear likely that he will demonstrate any in the near future.
7) With respect to any barriers which may have reasonably or unreasonably been placed in the path of the parents to have a meaningful relationship with the child, the court finds that the Department of Children and Families has met its obligations to CT Page 5256-AAAAAAA both parents by repeatedly offering a variety of services and treatment modalities to them including regular and frequent visitation. If the father had demonstrated any genuine interest in parenting this boy, both DCF and the child would have eagerly cooperated. Regrettably, the father tragically has failed to be physically or emotionally available to his son.
The court concludes that it would be in Jamie's best interest to have the parental rights of the biological parents terminated so that he may be placed in a secure and stable home through adoption or long-term placement.
ORDER
Having considered the foregoing facts, it is found by clear and convincing evidence to be in Jamie's best interest for the parental rights of his biological parents to be terminated so that he may be placed in adoption, or other permanent planning be accomplished without further delay. It is therefore ordered that the parental rights of the mother Susan T. are terminated by consent and the parental rights of Frank T., Jr., be and they hereby are terminated. It is further ordered that the Commissioner of the Department of Children and Families be appointed the statutory parent for the purpose of placing the child forthwith in adoption and to report to this court in writing as to the progress toward that end no later than ninety days from the date of this judgment. If adoption has not been finalized within six months from the date of the judgment, the Commissioner is further ordered to submit a motion to review a plan for terminated child no later than that date to ensure compliance with federal law which mandates judicial review of every child in the guardianship of this state at least every eighteen months.
APPEAL
The parents have twenty days from the date of this judgment in which to take an appeal. If an appeal is requested and trial counsel for the biological mother is willing to continue representation, this court will appoint such attorney to act as appellate counsel, at public expense if the appellant is indigent, until all appellate process is completed. Practice Book § 4017. If the biological father wishes to appeal, the court will appoint an attorney to act as appellate counsel, at public expense if the appellant is indigent, until all appellate process CT Page 5256-BBBBBBB is completed. Practice Book § 4017. If, however, in the exercise of professional judgment as an officer of the Superior Court, the attorney declines to perfect such appeal because, in the attorney's opinion, it lacks merit, such attorney is not required to do so but may instead simultaneously file a timely motion to withdraw and another motion to extend the appellate period to the full maximum of forty days as permitted by law. Practice Book § 4040. Such motions, if unopposed, will be granted ex parte and a new attorney appointed to review this record and make an independent determination of the merits of such appeal. If the second attorney determines it lacks merit, the reason for this opinion shall be promptly submitted to the court in writing. The party seeking the appeal will then be informed by the Court Services Officer or the Clerk of the balance of the forty days in which to secure counsel for the purpose of taking such appeal, who may, if qualified, be appointed by the court to be compensated by the state. Douglas v.California, 372 U.S. 353 (1963); Fredericks v. Reincke, 152 Conn. 501
(1964).
Dated at Middletown, Connecticut this ninth day of August, 1996.
Foley, J. CT Page 5257